IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JONATHAN F. BURTON,

               Plaintiff,

    v.                                        Civil Action No.
                                             3:17-CV-0664 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

COUGHLIN & GERHART, LLP         LARS P. MEAD, ESQ.
P.O. Box 2039
Binghamton, NY 13902

FOR DEFENDANT:

HON. GRANT C. JAQUITH            DAVID B. MYERS, ESQ.
U.S. Attorney for the                 Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Acting Commissioner, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on February 20, 2018, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

(1)  Plaintiff's motion for judgment on the pleadings is GRANTED.

(2)  The Acting Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

(3)   The matter is hereby REMANDED to the Acting Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

(4)   The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   February 26, 2018
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------x
JONATHAN F. BURTON,

                         Plaintiff,

vs.                                   3:17-CV-664

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
------------------------------------------------x
```

*Decision* – February 20, 2018

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | COUGHLIN, GERHART LAW FIRM<br>Attorneys at Law<br>99 Corporate Drive<br>Binghamton, New York 13902<br>  BY:  LARS P. MEAD, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY:  DAVID B. MYERS, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
P.O. Box 7367
*Syracuse, New York 13261*
(315)234-8546

1    THE COURT:  I have before me a request for judicial
2  review of an adverse determination by the Acting Commissioner
3  pursuant to 42, United States Code, Sections 405(g) and
4  1383(c)(3).
5    The background is as follows.  The plaintiff was
6  born in November 1986.  He is currently 31 years old.  He was
7  28 years old at the time of the hearing in this matter.  He
8  is 6-foot 2-inches in height and weighs 260 pounds.  He
9  attended school through the 11th grade.  He went to an
10 alternative school for seven years and dropped out after a
11 good friend committed suicide.  He achieved his GED at age
12 22.
13   Plaintiff rents a room.  He last worked in 2006 for
14 four to six months part time, 15 to 20 hours a week, in
15 Florida selling video games and systems.  His only other
16 significant employment was a summer job when he was 14 or 15
17 years old at the Ithaca Science Center.
18   Plaintiff does not have a driver's license.  He
19 counts on his mother or public transportation to get him
20 around.
21   Plaintiff has several physical conditions that have
22 been diagnosed, including asthma, for which he uses an
23 inhaler; a back injury; knee conditions, which he has had
24 since age 13.  He has had two surgeries.  He cannot bend his
25 knee.  He uses a cane and a crutch on occasion.  This is his

1  right knee.
2          Mentally the plaintiff has significant issues of
3  long standing.  The record reflects that he was abused by his
4  father until his father died when he was age 15.  Since
5  childhood he has had depression, anxiety, and symptoms due to
6  PTSD.  He has been diagnosed also with having a dissociative
7  disorder not otherwise specified.  That's at 427.
8          As a child he treated with Dr. Anthony Pane, a
9  psychologist.  His mental condition has also been addressed
10 by his primary care provider of long standing, Dr. Robert
11 Breiman, and Dr. Bernard Member, who is a psychiatrist.  He
12 has been on Prozac, a generic brand of it, Xanax and
13 Temazepam.
14         He also has a history of substance abuse.  He has
15 used marijuana since age 13.  That's at 427.  He has been in
16 various facilities on an inpatient basis.  He spent three
17 weeks in a psychiatric ward in Arizona when he was
18 approximately 18 years old.  He went in for a dual diagnosis
19 treatment as an inpatient.  He went to Tully Hill in 2004,
20 and then spent from February 2005 to July of 2005 at The
21 Refuge.  Although, unfortunately, the records of the
22 treatment at The Refuge are no longer attainable, they've
23 been destroyed, but based on the record retention policy of
24 that facility.
25         Plaintiff suffers from panic attacks, especially

when he finds himself in large groups, and he attributes it, at least in part, to the sexual abuse at the hands of his father.

As counsel indicated, he does have some interests and hobbies. He uses the computer, collects and polishes rocks, he carves and stains walking sticks.

Procedurally, the plaintiff applied for Supplemental Security Income payments on August 4, 2013, alleging an onset date of January 21, 2006. He also applied for childhood benefits on November 5, 2013 alleging a similar onset date.

A hearing was conducted by Administrative Law Judge John P. Ramos on August 10, 2015, to address those applications. ALJ Ramos issued an unfavorable decision on October 8, 2015. Review of that decision was denied by the Social Security Administration Appeals Council on April 20, 2017.

In his decision ALJ Ramos applied the familiar five step sequential test for determining disability.

At step one he concluded that the plaintiff had not engaged in substantial gainful activity since his alleged onset date.

At step two he found that the plaintiff suffers from severe conditions, including posttraumatic stress disorder, or PTSD; obesity; bilateral degenerative joint

1  disease of the knees; lumbar spine degenerative disc disease;
2  and asthma.
3         At step three he concluded, however, that none of
4  those conditions met or medically equaled any of the listed
5  presumptively disabling conditions set forth in the
6  Commissioner's regulations, specifically addressing listings
7  1.02, 1.04, 3.03 and 12.06.
8         After surveying the medical evidence, the ALJ then
9  concluded that the plaintiff retains the residual functional
10 capacity notwithstanding his conditions to perform sedentary
11 work, except that he must avoid exposure to extremes in
12 temperatures and concentrated respiratory irritants.
13        He went on to find that the claimant retains the
14 ability to understand and follow simple directions and
15 instructions and to perform simple tasks with supervision and
16 independently.  The claimant can maintain attention and
17 concentration for simple tasks; can regularly attend to
18 routine and maintain a schedule; and can relate to and
19 interact with others to the extent necessary to carry out
20 simple tasks, but should not have any interaction with the
21 public.  The claimant can handle reasonable levels of stress
22 defined as performing work with occasional decision making
23 related to the performance of simple tasks involving
24 goal-oriented work rather than work involving a production
25 rate pace.

1              Applying that RFC, the ALJ concluded first that
2     plaintiff did not have any significant past relevant work.
3              At step five he concluded that if plaintiff was
4     able to perform a full range of sedentary work, the
5     Medical-Vocational Guidelines, or the Grids, would direct a
6     finding of no disability, citing Rule 201.27.  He did find,
7     however, that plaintiff's non-exertional limitations
8     significantly eroded the job base on which the Grids are
9     predicated.  Based on the testimony of a vocational expert,
10     he then concluded that plaintiff can perform in the positions
11     of a document preparer and an addresser, consistent with the
12     Dictionary of Occupational Titles, and, therefore, found that
13     the plaintiff was not disabled.
14              As you know, my role is limited to determine
15     whether correct legal principles were applied and whether the
16     ALJ's determination is supported by substantial evidence.
17              Viewing first the handling of the treating source
18     opinions of Dr. Member and Dr. Breiman, those opinions, of
19     course, are entitled to controlling weight if they are
20     supported by medically acceptable clinical and laboratory
21     diagnostic techniques and are not inconsistent with other
22     substantial evidence.
23              Of course, as the Commissioner argues it, if there
24     are conflicts in the form of contradictory medical evidence,
25     the resolution is properly entrusted to the Commissioner.

However, if the Commissioner does not give controlling weight to the treating source opinions, there are several factors that must be considered in order to determine what, if any, weight they are entitled to, including length of the treatment relationship, frequency of the examination, nature and extent of the treatment relationship, degree to which the medical source has supported his or her opinion, the degree of consistency between the opinion and the record as a whole, whether the opinion is given by a specialist, and other evidence which may be brought to the attention of the ALJ.

In my view, in this case the determination of ALJ Ramos is not sufficient and it does not adequately articulate the basis for rejecting the treating source opinions of Dr. Breiman, who saw the plaintiff dating back to 2006, and Dr. Member.

As the plaintiff has argued, the opinions of a treating source are particularly important when dealing with a mental condition. Clearly, as indicated by Dr. Pane, this plaintiff has suffered this medical condition for the bulk of his life. Dr. Breiman and Dr. Member are uniquely positioned, based on their having treated the plaintiff, to opine concerning that condition and any limitations. That is adequately laid out in the case cited by plaintiff, *Olejniczak versus Colvin*, reported at 180 F.Supp.3d 224 (W.D.N.Y. 2016).

1           I just did not find that there was a clear
2    explanation of the rejection, the decision to reject those
3    opinions and to give them only little weight.  The issue of
4    whether the failure to quantify seriously limited as a
5    category as a sufficient basis is something that the
6    plaintiff has pointed out.  It seems at page 85 of the
7    Administrative Transcript that ALJ Ramos was able to
8    translate seriously limited into 25 to 33 percent of the
9    time.
10          I recognize, as the Commissioner's argued, that
11   there is no need, the Second Circuit has said, to slavishly
12   recite the factors that I've just mentioned and that are
13   contained in the regulations.  But the rationale is not clear
14   here.  I'm not sure that it is sufficient to simply say it's
15   a check-the-box form, and it's not sufficient with regard to
16   Dr. Breiman to just say that the record is inconsistent
17   without elaboration.
18          And I think the RFC is similarly infected.  The
19   sole evidence supporting the RFC is Dr. Selesner's opinion
20   from January 15, 2014.  What he did not have before him at
21   the time were opinions from Dr. Member from January 4, 2015,
22   a treating source; Dr. Breiman from February 11, 2015, a
23   treating source; and Dr. Breiman from August 12, 2015, a
24   treating source.  Those were all contrary to the RFC, as is
25   the December 21, 2013 opinion of Dr. Tien, which Dr. Selesner

1  did have before him.  They're also buttressed by Dr. Pane's
2  opinions.
3         So it doesn't appear that, for example, 12F, 13F,
4  15F, 16F, 20F, 21F and 22F were in front of Dr. Selesner when
5  he rendered his opinion, so I find that the Residual
6  Functional Capacity found by the ALJ is not supported by
7  substantial evidence.  And, of course, therefore, the
8  vocational expert's testimony is flawed at step five where
9  the Commissioner bears the burden of proof because the
10 hypothetical posed was based on the infected RFC.
11        So I don't find persuasive proof of disability in
12 this record such that I would order a remand simply for
13 calculation of benefits.  I will grant judgment on the
14 pleadings to the plaintiff and direct that the matter be
15 remanded for further consideration by the Commissioner.
16        Thank you both for really excellent arguments.  I
17 enjoyed working on this case thoroughly.  Hope you have a
18 good day.
19               *           *           *
20
21
22
23
24
25

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter